UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

JAMES GOMES,                          CASE NO: 01- CR 1022 001- WGY
     Petitioner

-V-                                    HONORABLE JUDGE WILLIAM G.YOUNG

UNITED STATES,                    SUPPLMENT BRIEF TO 2255 MOTION
     Respondent

       Now comes the petitioner, James Gomes, Pro Se, in this supplememt brief to his 2255 motion.
       This petitioner, as he acting pro se, file this motion under the standars of HAINES v KERNER, 404, U.S. 519, 30 L.ED. 2d 692; and as he is not a trained litigator then the petitioner's filing must be construed under less stringent standards than those of a retained counsel.

MEMORANDUM AND AFFIDAVITS IN SUPPORT OF ATTACHED

                                             RESPECTFULLY SUBMITTED, PRO SE
                                             JAMES GOMES # 23823-038
                                             FCI ELKTON, P.O. BOX 10
                                             LISBON, OHIO 44432

CERTIFICATE OF SERVICE

I CERTIFY THAT A COMPLETE AND TRUE COPY OF THE FOREGOING 2255 APPLICATION, AND SUPPLEMENT BRIEF WAS PLACED IN THE INSTITUTION MAIL WITH FIRST CLASS POSTAGE TO BE FORWARDED TO ASSISTANT UNITED STATES ATTORNEY DONALD CABELL, THE UNITED STATES ATTORNEYS OFFICE, JOHN JOSEPH MOAKLEY COURTHOUSE, ONE COURTHOUSE WAY, BOSTON, MA. 02210, ON THIS __01__ DAY OF __6__ 2005

MEMORANDUM AND AFFIDAVIT IN SUPPORT OF ATTACHED

BACKGROUND HISTORY:

On February 27, 2002, a federal grand jury returned a three count superseding indictment charging the defendant with two counts of being a felon in possession of a firearm in violation of 18 U.S.C § 922 (g)(1), counts one and two; and with one count of conspiracy to possese five grams or more of cocaine base with intent to distribute, in violation of U.S.C. § 846, count three . On Mat 7,2002 the defendant's jury trial began; on May 16,2002 the government rested its case and at the time the defense counsel made an oral motion for judgement of acquittal on the conspiracy charge pursuant to Rule of Criminal Procedure 29. The trial court heard argument on the motion and took it under advisement. The defendant also subsequently filed a written motion for judgement of acquittal. The tril court denied the motion..

on May 17, 2002, the jury found the defendant guilty of count one, felon in possession, and count three, conspiracy to distribute cocaine base. The defendant was found not guilty of count, felon in possession.

On May 28, 2002, the defendant filed a post-verdict motin for judgement of acquittal, accompanied by an affidavit and memorandum in support of the motion. The government filed a response to the defemdant's motion on June 21, 2002. On September 12, 2002, the trial court held a hearing on the post-verdict motion, and after hearing the motion the court denied the defendant on his motion for judgement of acquittal.

On October 21,2002, the trial court  sentenced the defendant to  10 years  in custody on each count to run concurrent with the other folowed by five years of supervised release, and a $200 assesement along with a condition that prohibits him from possessing a firearm.

On October 21, 2002 the defendant filed a timely notice of appeal in the trial court. The First Circuit Court of Appeals heard Oral argument on the case on May 3, 2004, on July 21, 2004, in a published opinion, the First Circuit affirmed the defndant's conviction. On September 24 2004, the defendant filed a petition for a writ of certiorari that was denied the following month. The defendant now makes a timely filing of this 2255 motion claiming a denial of due process due to ineffective assistance of counsel, encompassed with perjury, and federal government lack of jurisdiction.

In order to prevail upon a 2255 motion the movant must allege as a basis for relief: 1. an error of constitutional magnitude; 2. a sentence imposed outside of the statutory limits; 3. an error or fact of law that was so fundamental as to render the entire proceedings invalid. Weiber v United States 268 F.3d 346, 351, (6th cir. 2001)

It is the present contention of the instant movant that his counsel in the criminal matter of James Gomes, was critically inffective, and due to counsel'l inadequate representation the instant movant was convicted and sentenced in violation of his constitutional rights of Due Process Of Law, and constitutional right to EFFECTIVE ASSISTANCE of counsel.

For the facillitation of this Honorable Court, the present movant provide that the claim of ineffective assistance of counsel could not be raised before the trial court because there had been no opportunity to develope a record, or include in the record, and the record evidence bearing on the merits of the allegations. Further, it is well settled law which dictate that ineffective assistance of counsel claims are properly raised in a collateral attack on a conviction. Roe v Ortega, 145 L.ED 2d 985 (2000)

Additionally, of all rights an accused person has the right to be represented by effective counsel is by far the most persuavive, because it profoundly affects his abilty to assert any other rights that he may have. United States v Chronic, 80 L.Ed 2d 657; as an initial matter, it is the law of all Circuit Courts that, claims of inadequate representation cannot be determined on direct appeal, where such claims are raised before the trial court.

Citing Strickland v Washington, 466 U.S. 688, 80 L.ED.2d 674, 104 S.Ct. 2052 in its entirety, and based on the petitioner's counsel's own admition that is recorded in trial transcripts closing arguments on May 17, 2002, volume 7, page 30, lines 24 and 25;

> " you know, I haven't really been trying cases for too long"

that inexperience resulted in the petitioner not being properly advised, or properly informed of the significance of a government plea offer, in addition to the petitioner's counsel failure on providing a professional opinion of the possibility of a jury acquittal, or conviction. The petitioner did know all along that he was innocent of what the government was alleging but he should have been informed of the possibility of entering an Alford plea.

In Alford v North Carolina, 27 L.ED. 2d 169,171, the U.S. Supreme Court ruled that a defendant intelligently conclude that his interest required entry of a guilty plea, and the record before the judge contained strong evidence of guilt, here the government had s strong case against the defendant whether he realized or disbelieved his guilt, he should have insisted on a plea deal because in his view he had nothing to gain by a trial and much to gain by pleading. Because of the overwhelming evidence against him, a trial was precisely what the defendant, nor his attorney, desired.

The defendant's repeated declaration of innocence( as in this instant case) did not prove that he would not have accepted a guilty plea in prosecution of his offenses, and subsequently adopt an Alford Plea,(as this petitioner would have done) and to show prejudice,according to Griffin_v_United_States, 330 F.3d 733,739,(6th cir.2003) the petitioner need only to show a reasonable probability that he would have pled differently. For the petitioner's repeated declarations of innocence was in part based on the fact that he did not have any agreement with Jannelle Divens whatsoever that could sustain a conviction of conspiracy, or any true possession of a firearm such as his not guilty verdict for count two, which the same people and circumstances were involved, so logic would have it that, hey, if I am not guilty of the one, I sure can't be guilty of the other.

    EXCERPTS FROM TRIAL TRANSCRIPTS OF MAY 14, 15, 16, and 17, 2002,

    FROM VOLUMES 4, 5, 6, and 7, of which the following are:

Tr.Tran. volume 4, page 135, lines 12-20;cross-examination of the government's center piece witness, Jose Manuel Troche.
```
        Q.You hear no words being exchanged between Jimmy Gomes and
          the woman Janelle regarding a purchase of drugs, do you?
        A.But--
        Q.My question, Sir-
        A.Yes,
        Q-do you hear
        A.No.
```
PAGE   137, line 10-20, Volume 4
```
        Q.And so you witnessed everything that transpired between
          Janelle and Jimmy Gomes at that point and time, correct?
        A.At some point. I don't know if it was specifically at
          that point.
        Q.Okay. and you're saying that you actually witnessed MR.Gomes
          give money to Janelle, Janelle give him drugs, and then you
          two leave together.
        A. I gave him the money.
        Q.Right.You actually saw him give this money over to Janelle.
        A._I_don't_know_if_he_gave_it_over._I'm_not_sure.
```
THAT IS A TOTAL CONTRADICTION TO WHAT SPECIAL AGENT OF THE ATF TESTIFIED TO
BEFORE THE FEDERAL GRAND JURY ON FEBRUARY 27,2002.

On February 27, 2002, when giving testimony before the federal grand jury while being questioned by A.U.S.A. Donald L. Cabell, on page 8, lines 11-15 the agent testifying is recorded as saying:

> Gomes walks, the informant is standing at the doorway; so, he watches in the kitchen as Gomes goes over, gives her the money. She pulls it out of her pocket, gives it to him, and they all come out and leave, leave the location.

That testimony is the sole reason the petitioner was indicted for conspiracy and according to the government's own witness under oath, at the petitioner's trial, what the special agent from ATF testified to in securing the indictment aginst the petitioner was totally false.

> Volume 4, page 143, lines 9-17:
> Q. Now Mr. Cabell played these tapes for you, a good hour's worth of testimony on the, or recorded conversations on December 11, correct?
> A. Correct.
> Q. And it's fair to say after you listened to that roughly hour or so recorded conversation you heard absolutely no conversation between Jimmy Gomes, and this woman Janelle regarding the sale of crack cocaine.
> A. Yeah, I can say that.

> Volume 5, page 11- 23, redirect examination of Jose Troche, government witness, by Mr. Donald Cabell, Assistant United States Attorney.
> Q. All right. And at any point was there any mention regarding the price?
> A. Oh Yes.
> Q. Who did you negotiate with?
> A. Mr. Gomes.
> Q. Now, when you did the actual purchase of cocaine as you.ve testified to, who did you give the money to?
> A. Mr. Gomes.
> Q How much money did you give to him?
> A. 1,350. 1,350.
> Q. Who did you negotiate this price with?
> A. Mr. Gomes.
> Q. Who did you receive the cocaine from?
> A. Mr. Gomes.

Volume 6, page 66 begins direct of government witness Emanuel Baptiste.
page 101, lines 4-17.

> Q. You didn't ask for Jimmy Gomes help to sell a fiream back on that day?
> A. I believe that was the story we were using back then.
> Q. That was the story you were using right?
> A. Yeah, Yeah.
> Q. Asking him for help, right?
> A. I beleive so.
> Q. And this is a perso that you call family, correct?
> A. Yes Sir.
> Q. And you didn't tell Mr.Gomes that the reason why you needed his help is because Jose would pay much more money knowing that it was coming from a stranger than from you?
> A. Yes Sir...

Volume 6, page 91, line 18.

> The Court: Okay. So where's the conspiracy.

page 92, lines 11 and 12, again the court:
> The Court: No wait a minute here. What do you mean the cocaine Janelle sold.

The reality of what actually occured on December 11,2001 was that the crack cocaine that Jimmy Gomes was to have conspired with Janelle Divens was really crack cocaine that already belonged to this petitioner and that he was in possession of it all the while. That is why all the testimony, and tape recordings at petitioner's trial failed to put forth that the petitioner had given any money to Janelle, even as the Court itself ask in disbelief of where is the conspiracy,(volume 7, page 91, line 18; page 92, lines 11,and 12).

This petitioner had to hide the fact that the crack cocaine was his from the start to avoid being talked down in price or to give up freebies as Emanuel Baptiste confirmed in testimony on page 101, lines 11-17 of volume 6.(also see attached affidavit).

This petitioner is really just guilty of the substantive offense, and as the United States Supreme Court said in Ianelli v United States, 420 U.S. 770,777 (1975) that it is clear that a substantive offense and a conspiracy to commit it are separate and distinct offenses. United States v Izzi, 613 F.2d 1205,1210 (1st cir.1980)- a simple buyer-seller relationship does not establish a conspiracy. United States v Lennick 18 F.3d 814 (9th cir.1994)

That is why there exist no evidence that Janelle entered a agreement to further distribute any drugs; nor is there any evidence of a common design or purpose of Gomes joining with anyone other than himself and the government informants. United States v Mercer, 165 F.3d 1331 (11th cir. 1999). The crak cocaine was the petitioner's from beginning to end, and he just unfortunately led two people to believe he was getting it from someone else to avoid the scene as played out when the government's witness, Jose Troche testified to balking to the original price of $1,500.

And by no means is this petitioner relitigating any previous issues that were argued at trial closing, or that was presented on appeal, he is just making his case so it will be understood why he knew he was always innocent of any conspiracy allegation with Janelle, because there never was any whatsoever, and that basically voids the government of any basis for a conspiracy chage against the petitioner, and the lack of that jurisdiction is also borne out due to the exposing of the ATF special agent giving absolutely false testimony regarding psuedo money that was never given to Janelle that subsequently resulted in the petitioner being indicted for conspiracy to distribute.

All of this should have played a major role in the eptitioner being advised by his counsel of entering a Alford Plea, of which is recognized by citing these first circuit cases: United States v Padilla-Galarzo 351 F.3d 594,598(1st cir.2003); Oken V Warden-MSP, 233 F.3d 86,89,90,(1st cir.2000); and Olsen v Carreiro 189 F.3d 52,59,(1st cir.1999).

-8-

For failure to explore option of an Alford Plea falls below reasonable attorney standard, along with the petitioner's counsel's own admission that he had not been trying cases very long,(trial trans.volume 7, page 30 lines 24-25); and it was the petitioner's life and liberty at stake which give strong cause to believe that counsel's performance fell below objective standard of reasonableness, that is, that it fell outside the wide range of reasonable representation, and there exist reasonable probability that but for counsel's unprofessional errors, results of the proceedings would have been different.

Also, the petitioner's trial counsel failed to ask the petitioner if he wanted the JURY POLLED, now under Rules of Crim. Proc. 31 (d), the petitioner had the right to have the jury polled for it is the proper method to ascertain whether the verdict reflects the intent of the JURORS is by request to have the jury polled. Plolling is a procedure designed to test the numerical validity of a verdict at the time it is rendered. And in United States v Love, 597 F.2d 81,85 states that:

> It thus appears that the purpose of the jury poll is to make certain that one of the prerequisites of a valid verdict-unanity-has been achieved. The Fifth Circuit has held that"a jury has not reached a valid verdict untill deliberations are over, the result is announced in open court, and no dissent by a jury is registered". A footnote states,"even at this point, where the verdict is announced to the Court and no dissent is voiced, the verdict may not be  accepted by the Court if a poll taken before is recorded indicates lack of unanimity". United States v Taylor , 507 F.2d 166,168(5th cir.1975).

But this petitioner's right to have the jury polled was waived by his attoney's failure to do, or to ask the petitioner if he wanted the jury polled. Whether it was  waived, or considered forfeited, the pegitioner's counsel is the one that was at fault for that very possible  crucial procedure that did not take place that could have very well shown the lack of unanimity.

This petitioner also makes the claim that due to the perjured testimony given by ATF Special Agent Pijaca before the Federal Grand Jury whether it was inadvertant or not, was very material and crucial to having the petitioner indicted for conspiracy to commit to distribute crack cocaine and not the lesser offense of mere possession. That false testimony did without a doubt taint the petitioner's indictment and a grave miscarriage of justice will will continue, in the event that some ramification do not take efffect and remedy that grave defect.

Under all these circumstances a evidendiary hearing is warranted for the petitioner deserves the right to develope a record to show that there is a reasonable probability that he would have pled out adopting an Alford Plea and a plenary hearing is aslo warranted so that crucial testimony from the petitioner, and at least one other witness, can be entered into the record to confirm affidavit of that drugs were always belonging to the petitioner and that he was just trying to unload his stash at a comfortable price. A evdentiary hearing will always put into the record whether the ATF Agent Pijaca was told from the beginnning that their informant Troche' did not see the petitioner give Janelle any money , or whether he was mislead. For it is quite obvious that a lie was told before the Federal Grand Jury and that cannot be taken lightly.

RESPECTFULLY SUBMITTED
*James Gomes*
JAMES GOMES, PRO SE# 23823-038
FCI ELKTON, P.O.BOX 10
LISBON, OHIO 44432

SWORN AFFIDAVIT

I, James Gomes, do hereby make this affidavit of my own freewill and accord being not under the influence of any drugs.

I am making this affidavit to accompany my 2255 motion and having it entered to give credence on my behalf to set the record straight of my involvement with Jose Troche, and Neil Baptiste.

I am making this affudavit to say that I had always had possession of the crack cocaine that I was falsely accused of giving money to a one Janelle Divens. I wanted the people that were buying it from to think that someone else was involved so that they would not try to get me to lower the price that I wanted for it, or to try to get me to give them some front or freebies untill they could pay me later.

I am making this affidavit to say at no time did Janelle know my true purpose for bringing these two guys by her house, and at not time did I ever enter into any agreement with her to buy anyting from her. Nor did I ever give her any money that night as alleged in the indictment and as the ATF agent testified falsely of before the federal grand jury.

*James Gomes*
JAMES GOMES# 23823-038